UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

FILED

FEB 11 2022

Clerk, U.S. District Court
Texas Eastern

4:22- CV-100
JORDAN / Nowak

| | |
|---|---|
| FRANCOIS AUGUSTON,<br><br>Plaintiff,<br><br>v.<br><br>ROYAL NEIGHBORS OF AMERICA<br>an Illinois Corporation,<br><br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is FRANCOIS AUGUSTON ("Plaintiff") a natural person, resident of the
Eastern District of Texas, and was present in Texas for all calls, in this case in Denton
County, Texas.

2. Defendant ROYAL NEIGHBORS OF AMERICA ("Neighbors") is a corporation organized
and existing under the laws of Illinois and can be served via registered agent, General
Counsel and Secretary John Friederich at 4233 Hayes Court Davenport, Iowa 52804.

### JURISDICTION AND VENUE

3. **Jurisdiction.** This Court has federal-question subject matter jurisdiction over Plaintiff's
TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v.
Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject
matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code

302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

4. **Personal Jurisdiction.**  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5. **Venue**.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

6. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

### THE TELEPHONE CONSUMER PROTECTION ACT

### OF 1991, 47 U.S.C. § 227

7. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number

assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

9.  The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18.  Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19.  A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

20. Plaintiff has been on the Do-Not-Call Registry since October 2007.

21. The Plaintiff has received at least eight (8) phone calls within 30 days to his cell phones, 214-687-8516 without his prior express written consent and not related to an emergency purpose, soliciting "Life Insurance" products and services on behalf of Defendant Neighbors.

22. Plaintiff received multiple calls from a variety of spoofed caller ID's that contained a prerecorded message and were initiated using an automated telephone dialing system ("ATDS"). The calls were on behalf of Defendant Neighbors. The calls generally had a delay of 3-4 seconds of dead air before an audible tone connected the Plaintiff to a representative, indicating the calls were initiated using an ATDS.

23. Table below displays calls made to plaintiff by defendants:

TABLE A

| Number : | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 12/15/2021 | 10:24 AM | 214-677-4987 | Non-working spoofed number from telemarketer |
| 2 | 12/15/2021 | 10:26 AM | 214-654-3361 | Non-working spoofed number from telemarketer |
| 3 | 12/29/2021 | 11:34 AM | 979-426-5254 | Non-working spoofed number from telemarketer |

| 4 | 12/29/2021 | 1:53 PM | 214-679-5938 | Non-working spoofed number from telemarketer |
| 5 | 12/29/2021 | 5:29 PM | 214-683-4436 | Non-working spoofed number from telemarketer – transferred to John Rey |
| 6 | 1/05/2022 | 4:37 PM | 214-751-8396 | John Rey Sales Call |
| 7 | 1/06/2022 | 10:00 AM | 214-751-8396 | John Rey Sales Call |
| 8 | 1/06/2022 | 3:30 PM | 214-751-8396 | Purchased Insurance policy in order to ascertain who was behind the calls |
| 9 | 1/07/2022 | 8:50 AM | 214-751-8396 | Follow-up call not seeking damages |
| 10 | 1/07/2022 | 10:01 AM | 214-751-8396 | Follow-up call not seeking damages |
| 11 | 1/07/2022 | 1:25 PM | 214-751-8396 | Follow-up call not seeking damages |
| 12 | 1/10/2022 | 8:57 PM | 214-751-8396 | Follow-up call not seeking damages |
| 13 | 1/10/2022 | 4:23 PM | 214-751-8396 | Follow-up call not seeking damages |
| 14 | 1/12/2022 | 3:04 PM | 214-751-8396 | Follow-up call not seeking damages |
| 15 | 1/18/2022 | 1:10 PM | 214-751-8396 | Follow-up call not seeking damages |
| 16 | 1/24/2022 | 5:43 PM | 502-347-2930 | Non-working spoofed number |
| 17 | 1/24/2022 | 5:47 PM | 502-347-2930 | Non-working spoofed number – told not to call back |

24. Plaintiff answered each of the phone calls listed in Table A and was solicited for final expense insurance. During each of the phone calls from December 15, 2021, to December 29, 2021, Plaintiff was greeted by an "Indian" sounding individual who asked Plaintiff questions about his age, doctor, health, beneficiary and other insurance related questions.

25. On the December 29, 2021, phone call Plaintiff answered the phone and was connected to an "Indian" sounding representative who asked Plaintiff the same questions in paragraph 24 before transferring Plaintiff to agent John Rey.

26. Agent John Rey continued to call Plaintiff on a daily basis soliciting Plaintiff for life insurance.  Plaintiff did not need or want final expense insurance. However, in order to determine who had called Plaintiff multiple times soliciting life insurance, Plaintiff purchased a life insurance policy on January 06, 2022, as a direct and approximate cause of the phone call Plaintiff received from Defendant at 3:30 PM CST.

27. Plaintiff purchased and was delivered an insurance policy issued by Royal Neighbors of America as a result of the phone call Plaintiff received on January 6, 2022.

28. Plaintiff called the first four phone numbers in Table A and none of them were working phone numbers indicating spoofed caller IDs.  The number with a 502 area code was also called by Plaintiff and it is also a non-working number.

29. Each and every telemarketer the Plaintiff spoke with failed to properly identify themselves and the parties they were calling on behalf of.

30. Defendant participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

31. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

32. Mr. Auguston requested and was not given a copy of Defendant's internal Do-Not-Call policy.

33. Mr. Auguston has limited data storage capacity on his cellular telephone. Incoming

telemarketing calls consumed part of this capacity.

34. No emergency necessitated the calls.

35.  Defendant never sent Mr. Auguston any do-not-call policy.

36.  On information and belief, the Defendant did not have a written do-not-call policy while it was sending Mr. Auguston the unsolicited calls.

37.  On information and belief, the Defendant did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

38. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

### INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

39. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

40. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

41. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

42. Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

43. The Plaintiff has been harmed, injured, and damages by the calls including, but not limited

to:  reduced device storage space, reduced data plan usage, anger, frustration, invasion of

privacy, more frequent charging of my cell phone and reduced enjoyment and usage.

### The Plaintiff's cell phone is a residential number

44. The calls were to the Plaintiff's cellular phone (214) 687-8516 which is Plaintiff's personal

cell phone that he uses for personal, family, and household use. The Plaintiff maintains no

landline phones at his residence and has not done so for at least 15 years and primarily relies

on cellular phones to communicate with friends and family. The Plaintiff also uses his cell

phone for navigation purposes, sending and receiving emails, timing food when cooking, and

sending and receiving text messages. The Plaintiff further has his cell phones registered in

his personal name, pays the cell phone from his personal accounts, and the phone is not

primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

45. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by

placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the

Defendant violated Texas law by placing calls with a pre-recorded message to a cell phone

which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC

227(e).

46. The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e)

which in turn violates the Texas statute.

### I.     FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

9

1.      Mr. Auguston realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Auguston's cellular telephone numbers without his prior express written consent.

3.      Mr. Auguston is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Auguston is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Auguston also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

1.      Mr. Auguston realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

3.      Mr. Auguston is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

4.      Mr. Auguston is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

5.      Mr. Auguston also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

### III.  THIRD CLAIM FOR RELIEF

### Violations of The Texas Business and Commerce Code 305.053

1.      Mr. Auguston realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

2.      The foregoing acts and omissions of Defendant and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Auguston's cellular telephone numbers without his prior express written consent in violation of 47 USC 227 et seq. The Defendant violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

3.      Mr. Auguston is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

4.      Mr. Auguston is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV.  FOURTH CLAIM FOR RELIEF

## (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(C))

1.      Mr. Auguston realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

3.      Plaintiff was statutorily damaged at least thirty-two (32) times under 47 U.S.C. § 227(c)(3)(F) by the Defendant by the telephone calls described above, in the amount of $500 per call.

4.      Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## V.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Francois Auguston prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 8 calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award to Mr. Auguston of damages, as allowed by law under the TCPA;

G.      An award to Mr. Auguston of interest, costs and attorneys' fees, as allowed by law and equity

H.      Such further relief as the Court deems necessary, just, and proper.


February 7, 2022                                   Respectfully submitted,

Francois Auguston
Plaintiff, Pro Se
4704 Redwood Drive
McKinney, TX 75070
214-687-8516
Francois.ace@gmail.com